[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 28, 2002
THOMAS K. KAHN
CLERK

No. 00-14090

D.C. Docket No. 97-01615 CV-CAP-1

ERNEST D. JOHNSON,

Plaintiff-Appellee,

versus

BRIAN BREEDEN, Sgt.,
RUDOLPH GOMEZ,

Defendants-Appellants,

EDUARDO LUCIANO,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(January 28, 2002)**

Before CARNES, COX and NOONAN\*, Circuit Judges.

CARNES, Circuit Judge:

_____

\*Honorable John T. Noonan, Jr., U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

Brian Breeden and Rudolph Gomez appeal from a judgment entered upon a jury verdict finding that while acting as corrections officers they violated the Eighth Amendment rights of a prisoner, Ernest Johnson, by using excessive force against him. They ask us to reverse the judgment on grounds related to the jury instructions and special interrogatories that were used, and also because they say that no punitive damages should have been awarded. In addition, they seek a reversal of the district court's order awarding attorney fees. For the reasons that follow, we affirm the judgment as to liability damages but reverse the order awarding punitive damages and attorney fees and remand for a determination of the appropriateness of punitive damages and recalculation of the amount of attorney fees.

## I. BACKGROUND

### A. PROCEDURAL HISTORY

This lawsuit began when Johnson filed a variety of claims under 42 U.S.C. § 1983 against Breeden, Gomez, and others in their individual capacity. He claimed that Breeden and Gomez, along with corrections officers Eduardo Luciano and

Shane Burel, used excessive force against him while he was a prisoner, subjecting him to cruel and unusual punishment in violation of the Eighth Amendment.[1]

Breeden, Gomez, and Luciano filed a joint motion for summary judgment on qualified immunity and other grounds.[2] The district court denied that motion insofar as the excessive force claim was concerned. The case was tried before a jury. At trial, the parties agreed that on August 22, 1995, Ernest Johnson was incarcerated at Phillips Correctional Institution in Buford, Georgia, serving a 20-year sentence for armed robbery and aggravated assault. On that day, he was returning to his cell after a work detail. A prison guard questioned Johnson as to his possession of food items from the prison store when it was not his "store day." An altercation ensued. The Correctional Emergency Response Team responded to the disturbance.

The accounts of what happen thereafter diverge, and the jury heard sharply conflicting evidence. Johnson's version of events is that after Breeden, Gomez, Luciano, Burel, and another corrections officer named Eric Whitehead escorted him into his cell, Breeden choked him, and the other officers, except Whitehead

---

[1]Johnson also asserted other claims against these defendants and sued other defendants. We will not discuss those other claims or defendants, because they were all removed from the case one way or the other and are no longer at issue.

[2]Burel died before Johnson had even filed his complaint in this case, which was noted in a suggestion of death filed after the complaint.

(whom Johnson did not sue), punched him. Johnson was thrown to the floor, kicked, and beaten with batons until he lost consciousness. He started convulsing, was taken to the prison infirmary, and eventually to Gwinnett Medical Center. There, Johnson was examined and found to have a closed head injury with swelling of the left posterior parietal region of his head and seizure, as well as left eyebrow laceration, and multiple contusions to his face, shoulders, and upper back.

In contrast, Breeden and Gomez maintain, and presented evidence at trial, that Johnson became unruly when confronted about the store goods, and that after Johnson was escorted to his cell he attacked Breeden. No one attacked Johnson. Instead, he injured himself when he fell and hit his head on the heater in his cell as the officers were trying to restrain him. They only responded with the force necessary to restrain Johnson and protect themselves. In addition to putting forth this version of the facts, Breeden and Johnson disputed the severity of the injuries Johnson sustained. They introduced medical evidence, in the form of deposition testimony from the doctor who examined Johnson shortly after he was injured, that he had suffered only a cut over his eye and some minor contusions. In that doctor's opinion, Johnson's injuries did not fit his story of having been beaten up.

After hearing the conflicting evidence, the jury returned a verdict in Johnson's favor against Breeden and Gomez, awarding Johnson $25,000 in

4

compensatory damages, plus $45,000 in punitive damages ($30,000 from Breeden and $15,000 from Gomez). But the jury also returned a verdict in favor of Defendant Luciano. Breeden and Gomez filed a Renewed Motion for Judgment as a Matter of Law or, in the Alternative, Motion For New Trial, which contended, among other things, that they were entitled to a new trial because the district court had erred in refusing to submit their special interrogatories "which would have required the jury to find the acts necessary for a final determination by the Court of the Defendants' qualified immunity defense." The district court denied that motion.

Content with his judgment against Breeden and Gomez, Johnson has not appealed the judgment for Luciano or any of the pretrial rulings that went against Johnson on his other claims. Breeden and Gomez have appealed the judgment against them and the denial of their motion for new trial, as well as the award of punitive damages and attorney fees.

## II. DISCUSSION

### A. THE JURY INSTRUCTIONS

5

After the close of evidence, the defendants requested that the following jury instruction be given regarding Johnson's excessive force claim:

> After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment . . . [under] the Eighth Amendment. To be cruel and unusual punishment, the challenged conduct must involve more than ordinary lack of due care for the prisoner's interests or safety. Wantonness, not inadvertence or good faith mistake, characterize the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

> I charge you that to establish an Eighth Amendment claim for excessive use of force, a Plaintiff must prove that force was applied maliciously and sadistically for the very purpose of causing harm. A plaintiff is required to show more than mere negligence to establish a violation of the Eighth Amendment.

> Crucial to establishing an unnecessary and wanton infliction of pain is some proof that officials acted with specific intent. Therefore, unless you find that one or more of the Defendants have, in some way, acted with the specific purpose of harming Plaintiff, you may not hold those individuals liable in this case.

(citations and internal marks omitted).

The district court rejected that request, and instead used the Eleventh Circuit pattern jury instruction, substantially verbatim. The court instructed the jury, in relevant part:

> [T]he plaintiff claims the defendants, while acting under color of state law, intentionally deprived the plaintiff of the plaintiff's rights under the Constitution of the United States. Specifically the plaintiff claims that while

6

the defendants were acting under color of authority of the State of Georgia as correctional officers of the Phillips Correctional Institute, the defendants did intentionally violate the plaintiff's constitutional right to be free of cruel and unusual punishment.

Under the 8th Amendment of the Constitution of the United States, every person convicted of a crime or a criminal offense has the right not to be subjected to cruel and unusual punishment. This includes, of course, the right to not be assaulted or beaten without legal justification.

The law further provides that a person may sue in this Court for an award of money damages against anyone who, under the color of any state law or custom, intentionally violates the plaintiff's rights under the Constitution of the United States.

In order to prevail on this claim, the plaintiff must prove each of the following facts by a preponderance of the evidence. First, that the defendants intentionally committed acts that violated the plaintiff's constitutional right not to be subjected to cruel and usual [sic] punishment. . . .

The constitutional right to be free of cruel and unusual punishment includes the right not to be subjected to excessive force while being detained in custody by a law enforcement or corrections officer.

On the other hand, not every push or shove, even if it later seems unnecessary, will give rise to a constitutional violation, and an officer always has the right and duty to use such reasonable force as is necessary under the circumstances to maintain order and assure compliance with prison regulations.

Whether or not any force used in this instance was excessive is an issue for you to decide on the basis of whether such force, if any, was applied in a good faith effort to maintain or restore discipline, or whether it was used maliciously and sadistically to cause harm.

In making that decision, you should consider the amount of force in relationship to the need presented, the motive of the officers,

7

the extent of the injury inflicted, and any effort made to temper the severity of the force used.

Of course, when prison officials maliciously and sadistically use force to cause harm, the result would be cruel and unusual punishment regardless of the significance of the injury to the inmate.

The defendants contend these instructions were defective in several ways. In considering their contentions, we keep in mind that it is a deferential standard of review we apply to the district court's jury instructions and special interrogatory verdict forms. McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1072 (11th Cir. 1996). As long as they "accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed." United States v. Starke, 62 F.3d 1374, 1380 (11th Cir. 1995) (citing McElroy v. Firestone Tire & Rubber Co., 894 F.2d 1504, 1509 (11th Cir. 1990)). We examine whether the jury instructions, considered as a whole, were sufficient "so that the jurors understood the issues and were not misled." Id. (quoting Wilkinson v. Carnival Cruise Lines, Inc., 920 F.2d 1560, 1569 (11th Cir. 1991)). We do not engage in word-by-word hairsplitting when reviewing the instructions given at trial, because a "trial judge is given wide discretion as to the style and wording employed in the instructions." Carter v. DecisionOne Corp., 122 F.3d 997, 1005 (11th Cir. 1997).

## 1. Specific Intent

Defendants first contend that the district court's instructions failed to inform the jury that the defendants must have acted with specific intent before they could be found liable for excessive use of force in violation of the Eighth Amendment. They contend the jury should have been instructed that "[t]o establish an Eighth Amendment claim for excessive force . . . [a plaintiff] must prove that force was applied . . . maliciously and sadistically for the very purpose of causing harm." Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999) (citations and internal marks omitted). They insist that the instructions given were ambiguous on this point, allowing the jury to find them liable even if they had only negligently injured Johnson in attempting to restrain him and defend themselves.

We disagree. The instructions told the jury that whether any force used was excessive turned on whether that force "was applied in a good faith effort to maintain or restore discipline, or whether it was used maliciously and sadistically to cause harm." The jury was told that Johnson claimed the defendants had "intentionally deprived [him] of [his] rights under the Constitution," specifically, that they had "intentionally violate[d] [his] constitutional right to be free of cruel and unusual punishment." The instructions also said the law allows a person to recover money damages against one who "intentionally violates [his or her] rights under the Constitution," and that in order to prevail on his claim, Johnson must

prove "that the defendants intentionally committed acts that violated [his] constitutional right not to be subjected to cruel and usual [sic] punishment." The instructions were clear enough on the point that liability could be imposed only if the jury believed that excessive force was applied with the requisite intent.

2. Factors Used in Determining if Force Was Applied in Good Faith
Or Maliciously and Sadistically

Next, the defendants contend that the district court failed to instruct the jury on all of the factors essential to a determination of whether they had used force maliciously and sadistically for the very purpose of causing harm. The district court rejected the defendant's proposed jury instruction, which provided:

> In determining whether force was used maliciously and sadistically
> for the purpose of causing harm, you should consider five essential
> factors: 1) The extent of injury; 2) the need for application of force;
> 3) the relationship between that need and the amount of force used; 4)
> any efforts made to temper the severity of a forceful response; and 5)
> the extent of the threat to the safety of staff and inmates, as reasonably
> perceived by the responsible officials on the basis of facts known to
> them.

We have already quoted the instructions that were actually given on this subject, which were taken substantially verbatim from the Eleventh Circuit pattern instructions. The defendants contend that the instructions given differ greatly from their proposed instructions, which they say were taken almost verbatim from our Campbell opinion. They complain that the instruction given was more consistent

10

with a negligence claim than a constitutional claim, because it did not require the jury to consider whether there was a need for force to subdue Johnson and the threat to safety that Johnson posed.

Comparing the defendants' proposed instructions on this subject with those actually given, the closest thing to a substantive difference involves the fifth part of the proposed instruction, dealing with Johnson's threat to safety as reasonably perceived by defendants. But the instructions the court gave stated that: "an officer always has the right and duty to use such reasonable force as is necessary under the circumstances to maintain order and assure compliance with prison regulations." The given instructions also informed the jury that the key issue was whether the force used "was applied in a good faith effort to maintain and restore discipline, or whether it was used maliciously and sadistically to cause harm," and that the jury "should consider the amount of force in relationship to the need presented." Force that was necessary to subdue Johnson and that was reasonable in light of the threat to safety he posed would have been force "necessary under the circumstances to maintain order and assure compliance with prison regulations," and it would not have been force "used maliciously and sadistically to cause harm." It follows that the instructions given were not defective in this respect.

3. Deference Given to Prison Officials in Maintaining Prison Security and Presumption That They Properly Discharged Their Duties

11

The defendants' final contention about the jury instructions involves our statement in Campbell that prison officials are to be "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." 169 F.3d at 1374 (citation and internal marks omitted). The district court denied an instruction requested by defendants that said:

> I charge you that you may "presume that public officials have properly discharged their official duties." The burden is on the party challenging their conduct to rebut this presumption. . . .

> When the ever-present potential for violent confrontation and conflagration at a prison ripens into actual unrest and conflict, the prison's internal security is a matter normally left to the discretion of prison administrators. [P]reserving internal order and discipline are essential goals that may require limitation on the rights of convicted prisoners.

> Prison officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, visitors, and inmates themselves, against the harm inmates may suffer if guards use force. Circumstances frequently necessitate that these decisions are made in haste, under pressure, and without the luxury of a second chance.

> For these reasons, prison officials are given great deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

(citations and internal marks omitted).

The defendants' position is that Johnson refused to follow their directions and attacked an officer, and that their actions must be judged according to the exigencies of the circumstances and not with 20/20 hindsight. Even if they applied an excessive amount of force in restraining Johnson, they argue, what they did must be evaluated in light of the need to maintain security and with a presumption that they acted properly. They say that the failure to give their requested instruction effectively reversed the burden of proof because it required the defendants to prove that they had properly discharged their duties.

The district court, however, made it clear to the jury that the burden of proving that the defendants had used excessive force in violation of the Eighth Amendment rested on Johnson. The court told the jury:

> In order to prevail on this claim, the plaintiff must prove each of the following facts by a preponderance of the evidence. First, that the defendants intentionally committed acts that violated the plaintiff's constitutional right not to be subjected to cruel and usual [sic] punishment.

The defendants have cited no authority which requires that the jury be instructed that prison officials should be presumed to have properly discharged their duties. And we fail to see how the instruction which was given "leaves prison officials in the position of having to prove that they properly discharged their duties," as defendants contend. To the contrary, the jury was told that the burden was on the

13

plaintiff to prove that the defendants had intentionally violated his constitutional right not to be subjected to cruel and unusual punishment.

The instructions given also made clear that if the force was "applied in a good faith effort to maintain or restore discipline,"  no Eighth Amendment violation  had occurred.  The jury was explicitly told that "an officer always has the right and duty to use such reasonable force as is necessary under the circumstances to maintain order and assure compliance with prison regulations."  There was no error in this respect.  We turn now to the issue involving the district court's decision not to submit to the jury the defendants' special interrogatories.


## B.  THE SPECIAL INTERROGATORIES ISSUES

### 1. <u>The Role of Special Jury Interrogatories in Connection With a Qualified Immunity Defense</u>

Because of the purpose served by the doctrine of qualified immunity, a valid defense based upon it must be recognized as soon as possible, preferably at the motion to dismiss or summary judgment stage of the litigation.  <u>See</u> <u>Saucier v. Katz</u>, ___ U.S. ___, 121 S. Ct. 2151, 2155-56 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is

14

dispositive."); Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 536 (1991) (per curiam) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."); Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985) (stating that qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation").

Where it is not evident from the allegations of the complaint alone that the defendants are entitled to qualified immunity, the case will proceed to the summary judgment stage, the most typical juncture at which defendants entitled to qualified immunity are released from the threat of liability and the burden of further litigation. See generally Behrens v. Pelletier, 516 U.S. 299, 116 S. Ct. 834 (1996) (recognizing right to interlocutory appeal seriatim denial of motion to dismiss and denial of summary judgment on qualified immunity grounds). Even at the summary judgment stage, not all defendants entitled to the protection of the qualified immunity defense will get it. The ones who should be given that protection at the summary judgment stage are those who establish that there is no genuine issue of material fact preventing them from being entitled to qualified immunity. And that will include defendants in a case where there is some dispute about the facts, but even viewing the evidence most favorably to the plaintiff the law applicable to that set of facts was not already clearly enough settled to make

15

the defendants' conduct clearly unlawful.  But if the evidence at the summary judgment stage, viewed in the light most favorable to the plaintiff, shows there are facts that are inconsistent with qualified immunity being granted, the case and the qualified immunity issue along with it will proceed to trial.

Defendants who are not successful with their qualified immunity defense before trial can re-assert it at the end of the plaintiff's case in a Rule 50(a) motion. Fed. R. Civ. P. 50(a); Cottrell v. Caldwell, 85 F.3d 1480, 1488 (11th Cir. 1996). That type of motion will sometimes  be denied because the same evidence that led to the denial of the summary judgment motion usually will be included in the evidence presented during the plaintiff's case, although sometimes evidence that is considered at the summary judgment stage may turn out not to be admissible at trial. See generally Wright  v. Southland Corp., 187 F.3d 1287, 1304 n. 21 (11th Cir. 1999); McMillian v. Johnson, 88 F.3d 1554, 1584 - 85 (11th Cir. 1996). Where there is no change in the evidence, the same evidentiary dispute that got the plaintiff past a summary judgment motion asserting the qualified immunity defense will usually get that plaintiff past a Rule 50(a) motion asserting the defense, although the district court is free to change its mind.  See Abel v. Dubberly, 210 F.3d 1334 (11th Cir. 2000)(collecting cases).

It is important to recognize, however, that a defendant is entitled to have any

16

evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and enter a post-trial decision on the defense. When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity to those historical facts it finds;  that is the court's duty. Stone v. Peacock, 968 F.2d 1163, 1166 (11th Cir. 1992) ("The law is now clear, however, that the defense of qualified immunity should be decided by the court, and should not be submitted for decision by the jury."); Ansley v. Heinrich, 925 F.2d 1339, 1348 (11th Cir. 1991) ("[O]nce the defense of qualified immunity has been denied pretrial due to disputed issues of material facts, the jury should determine the factual issues without any mention of qualified immunity.").

A tool used to apportion the jury and court functions relating to qualified immunity issues in cases that go to trial is special interrogatories to the jury. "Qualified immunity is a legal issue to be decided by the court, and the jury interrogatories should not even mention the term.  Instead, the jury interrogatories should be restricted to the who-what-when-where-why type of historical fact issues." Cottrell, 85 F.3d at 1488 (internal citations omitted).  In a proper case, the use of special jury interrogatories going to the qualified immunity defense is not

discretionary with the court.  As we said in Cottrell, "[b]ecause a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted."  Id. at 1487.  In the same opinion, we explained: "Denial of such a request would be error, because it would deprive the defendant who is forced to trial of his right to have the factual issues underlying his defense decided by the jury."  Id. at 1487-88; see also See Willingham v. Loughnan, 261 F.3d 1178, 1184 n. 9 (11th Cir. 2001)("[W]hen the question of qualified immunity turns on specific questions of fact, the use of special interrogatories can be very helpful to a judge in determining the legal question of whether qualified immunity applies.")  But the failure to give requested jury interrogatories may not be error, or if error may be harmless, where the jury verdict itself, viewed in the light of the jury instructions, and any interrogatories that were answered by the jury, indicate without doubt what the answers to the refused interrogatories would have been, or make the answers to the refused interrogatories irrelevant to the qualified immunity defense.  That is the conclusion we reach in this case.

To explain our conclusion, we begin by setting out the interrogatories that the court actually gave the jury, and the jury's answers to them.  Next we will

18

discuss the applicable law and set out the special interrogatories that the defendants requested and the court refused to submit to the jury. And then we will explain why the failure to submit those interrogatories in this particular case did not matter.

## 2. The Verdict Form and Special Interrogatories Actually Used

Having rejected the defendants' request for special interrogatories going to the factual issues upon which their qualified immunity defense turned, the court submitted interrogatories of its own to the jury on the merits issue. Those interrogatories, and the jury's answers to them, were as follows:

Do you find from a preponderance of the evidence:

1.   That the Defendants intentionally committed acts that violated the Plaintiff's constitutional right not to be subjected to cruel and unusual punishment?

   | Answer Yes or No: | Brian Breeden | *Yes* |
   | | Rudolph Gomez | *Yes* |
   | | Eduardo Luciano | *No* |

   Note:   If you answered No to Question 1 as to each Defendant, you need not answer the remaining questions.

2.   That the Defendants' acts were the proximate or legal cause of damages sustained by the Plaintiff?

   Answer Yes or No     *Yes*

3.   That the Plaintiff should be awarded damages to compensate

for physical as well as emotional pain and mental anguish?

Answer Yes or No          *Yes*

If you answered Yes,
in what amount?          *$25,000 Breeden & Gomez*

4.    That the Defendants acted with malice or reckless indifference
      to the Plaintiff's federally protected rights and that punitive
      damages should be assessed against the Defendants?

Answer Yes or No          *Yes*

If you answered Yes,          Brian Breeden      *$30,000*
in what amount?
Indicate separate          Rudolph Gomez      *$15,000*
amounts as to each
defendant.          Eduardo Luciano    *$0*

SO SAY WE ALL.

Those interrogatories are the Eleventh Circuit pattern ones for eliciting a

verdict on the merits of a prisoner's excessive force claim. See Eleventh Circuit

Pattern Jury Instructions (Civil) § 2.3.1 (West 2000).  The answers the jury gave to

them  establish that the jury found  Breeden and Gomez had intentionally used

enough force  to cause Johnson damage including  physical pain as well as some

emotional pain and mental anguish.  The jury's answers also establish that the

physical and emotional pain and the mental anguish Johnson suffered as a result of

Breeden and Gomez's intentional, malicious, and sadistic acts was enough to

justify  $25,000 in compensatory damages.

The jury's answer to interrogatory no. 4 found the existence of either reckless indifference or malice. Because that interrogatory did not ask the jury to specify whether it was with reckless indifference or with malice that Breeden and Gomez acted, the jury's answer did not specify which of the two it found. None of the interrogatories the court submitted to the jury asked it to state explicitly whether the force the defendants used was applied sadistically and maliciously to cause harm. However, in its instructions the court told the jury that: "Whether or not any force used in this instance was excessive is an issue for you to decide on the basis of whether such force, if any, was applied in a good faith effort to maintain or restore discipline, or whether it was used maliciously and sadistically to cause harm." Reading that instruction and the jury interrogatories and verdict together, the inference is inescapable that the jury implicitly found the defendants had acted with malice and sadistically to cause harm. After all, we must presume that juries follow their instructions. See Weeks v. Angelone, 120 S.Ct. 727, 733 (2000); Richardson v. Marsh, 481 U.S. 200, 206, 107 S.Ct. 1702, 1707 (1987)(referring to "the almost invariable assumption of the law that jurors follow their instructions, which we have applied in many varying contexts")(internal citation omitted).

Therefore, the jury verdict and its answers to the submitted interrogatories,

when read against the court's instructions, establish that Breeden and Gomez intentionally, maliciously, and sadistically inflicted pain and injuries upon Johnson, including physical and emotional pain and mental anguish, in an amount sufficient to justify $25,000 in compensatory damages.

### 3. The Applicable Law

McMillian v. Johnson, 88 F.3d 1554 (11th Cir. 1996), involved a claim by a pretrial detainee plaintiff who had been transferred from a local jail to death row before he was tried on capital murder charges. The Due Process Clause of the Fourteenth Amendment prohibits punishment before conviction, and so if the defendants who transferred the plaintiff to death row did so for the purpose of punishing him (instead of for his own safety), they violated his constitutional rights. Id. at 1564. The district court concluded that there was a genuine issue of material fact as to the defendants' purpose, and accordingly denied their motion for summary judgment on the merits. Id. at 1564 - 65. The district court also denied the defendants' motion for summary judgment on qualified immunity grounds.

In McMillian we affirmed the denial of summary judgment on qualified immunity grounds, holding that prior decisions had clearly established the law that pretrial detention amounting to punishment violated due process, and we held that even though those prior decisions had involved different circumstances. Id. at

22

1565 - 66.  They "involved conditions such as double-bunking, mail restrictions, search policies, overcrowding, unsanitary food, and lack of adequate medical services."  Id. at 1565 (internal citation omitted).  There was no prior decision involving  detention on death row instead of in a pre-trail facility.  Nonetheless, we explained that:  "Bell [v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861 (1979)]'s prohibition on any pretrial punishment, defined to include conditions imposed with an intent to punish should have made it clear to all reasonable officials in [the defendants'] place that holding McMillian on death row to punish him before he was tried violated McMillian's due process rights."  Id. at 1565 (emphasis in original).  As a result, the defendants had violated McMillian's clearly established constitutional rights, if they acted with the purpose to punish him.

The defendants in McMillian contended  that, for qualified immunity purposes, we should ignore their subjective purpose or motivation and only decide whether a reasonable official in the defendants' circumstances and acting without a bad purpose (a purpose to punish) could have believed that it was lawful to transfer McMillian to death row before trial. Id. at 1566.  In rejecting that contention, we said this:

> Our precedent compels us to reject [the defendant's] contention. Like every other circuit that has considered the issue, we have held that intent or motivation may not be ignored when intent or motivation is an essential element of the underlying constitutional

23

violation. Edwards v. Wallace Community College, 49 F.3d 1517, 1524 (11th Cir.1995). A purpose to punish is an essential element of a pretrial punishment claim under the Fourteenth Amendment. Hence, [the defendants'] purpose must be considered in this case, just as discriminatory intent must be considered when an equal protection violation is asserted, see Ratliff v. DeKalb County, Ga., 62 F.3d 338, 341 (11th Cir.1995); Edwards, 49 F.3d at 1524, and intent or motivation must be considered when certain First Amendment claims are asserted, see, e.g., Tompkins, 26 F.3d at 607 (alleged retaliatory transfer of government employee); Losavio, 847 F.2d at 648 (alleged interference with speech); Musso, 836 F.2d at 743 (alleged content-based censorship at school board meeting). When [the defendants'] purpose to punish is considered, there is no question that their alleged conduct violated clearly established law.

Id.

The same is true in this case where the subjective element of the constitutional violation is that the force was used and the injury inflicted not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm to the plaintiff. Acting with that specific malevolent intent to cause harm, at least where (as here) more than de minimis injury results, violates the Cruel and Unusual Punishment Clause of the Eighth Amendment, and that was clearly established law at the time Breeden and Gomez entered Johnson's cell on August 22, 1995. See Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992); Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078 (1986).

We are aware of Saucier v. Katz, 121 S.Ct. 2151 (2001), but think that case

is distinguishable, because it did not involve a constitutional tort with a subjective intent element. Instead, Saucier involved a Fourth Amendment claim of use of excessive force against an arrestee, and such claims are purely objective. They turn solely on the objective reasonableness of the amount of force used in the circumstances, regardless of the intent or other subjective state of mind of the defendant officer. See Graham v. M.S. Connor, 490 U.S. 386, 395-98, 109 S.Ct. 1865, 1871-72 (1989). It makes perfect sense to conclude, as the Supreme Court did in Saucier, that with such claims the merits issue and the qualified immunity issue are distinct, so that the existence of a valid Fourth Amendment excessive force claim is not inconsistent with qualified immunity. In other words, a defendant officer could use force in making an arrest that is later judged to be excessive enough that it violates the Fourth Amendment, but if prior decisions did not clearly establish that the use of that amount of force in those circumstances was constitutionally excessive, the defendant officer would be entitled to qualified immunity. That is what Saucier holds.

It is different with claims arising from the infliction of excessive force on a prisoner in violation of the Eighth Amendment Cruel and Unusual Punishment Clause. In order to have a valid claim on the merits of excessive force in violation of that constitutional provision, the excessive force must have been sadistically

25

and maliciously applied for the very purpose of causing harm. Equally important, it is clearly established that all infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause. So, where this type of constitutional violation is established there is no room for qualified immunity. It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley. This is a different situation entirely from the one in Saucier , ___ U.S. at ___, 121 S. Ct. at 2160, where the Supreme Court said that, "neither respondent nor the Court of Appeals has identified any case demonstrating a clearly established rule prohibiting the officer from acting as he did, nor are we aware of any such rule."

With this applicable law in mind, we turn now to the defendants' requested special interrogatories which the district court declined to submit to the jury.

### 4. The Special Jury Interrogatories the Defendants Requested

The defendants requested that the following special interrogatories be given to the jury so that the district court could revisit the qualified immunity defense

26

after the verdict was returned:

1. Prior to entering the cell in D Building, did Plaintiff verbally abuse any of the Defendants?

2. Do you find that it was necessary for any of the Defendants to escort Plaintiff into his cell?

3. Did any of the Defendants instruct Plaintiff to sit on the bed until they exited the cell?

4. Did Plaintiff get up off the bed contrary to the instructions given to him?

5. Did Plaintiff deliberately strike Defendant Breeden?

6. Do you find that force by any of the Defendants was necessary to subdue Plaintiff?

7. Did Plaintiff resist any of the Defendants as they attempted to subdue him?

8. Did Plaintiff intentionally strike any of the Defendants during this altercation?

9. Did Defendant Sergeant Breeden use excessive force against Plaintiff?

   (a) If yes to above, was the force used malicious and sadistic, done for the very purpose of causing the Plaintiff harm?

10. Did Defendant Officer Gomez use excessive force against Plaintiff?

    (a) If yes to above, was the force used malicious and sadistic, and done for the very purpose of causing the Plaintiff harm?

11. Did Defendant Officer Luciano use excessive force against

27

Plaintiff?

    (a)    If yes to above, was the force used malicious and sadistic, and done for the very purpose of causing the Plaintiff harm?

12.    Was Plaintiff injured during this altercation?

    (a)    If yes, what injuries did Plaintiff sustain as a result of this altercation? **(please list)**

13.    If you find that Plaintiff suffered a laceration (cut) to his head above his left eye, was that injury caused by falling and hitting the heating unit?

14.    If you find that Plaintiff suffered a laceration (cut) to his head above his left eye, was that injury caused by any Defendant striking the Plaintiff?

    (a)    If yes, which Defendant(s)?

    (b)    If yes, with what kind of object/device?

15.    Were any of the injuries sustained by Plaintiff the result of excessive force? If so, which ones?

Obviously, requested interrogatory no. 11 is irrelevant because it involved a different defendant, one who received a jury verdict in his favor. Requested interrogatory nos. 6, 9 and 10, 12, and 15 are explicitly answered by the jury's verdict and its answers to the interrogatories that the court did submit. Requested interrogatories 1 - 5 and 7- 8 go to the circumstances that preceded the defendants' use of excessive force. Preceding and attendant circumstances are relevant in any

28

excessive force case, but to the extent of their relevance the answers to those requested  interrogatories are implicit in the jury's verdict and its answers to the submitted interrogatories;  to the extent they are not covered by the verdict and answers to the submitted interrogatories, the answers to the submitted interrogatories are irrelevant.

In other words, what force is excessive will depend upon the circumstances in which it is administered, but the jury in this case was instructed about that, and it found that the force used in this case was, in view of the circumstances, excessive. The jury also found that the force used was not administered to maintain or restore order or discipline but instead was inflicted maliciously and sadistically for the purpose of causing  harm.  No preceding circumstances could have justified excessive force administered for that specific purpose, at least not where it resulted in significant injury, which the jury found the force in this case did cause.

Requested interrogatories no. 13 and 14 go to the injuries Johnson suffered, but in answer to the interrogatories that were submitted the jury found that the excessive force Breeden and Gomez inflicted caused Johnson to suffer $25,000 worth of physical pain as well as emotional pain and mental anguish.  To the extent, if any, that the answers to the requested  interrogatories would have gone beyond those findings, they are not important to resolution of the qualified

immunity issue.

In summary, given the jury's verdict, when read in light of the instructions, and its findings in response to the submitted interrogatories, it was not an abuse of discretion for the district court to refuse to submit the defendants' requested special interrogatories. The reason is that the answer to each requested special interrogatory was either covered by the verdict and jury findings, or it was irrelevant to the qualified immunity issue in light of the verdict and jury findings.

Having said that, we remind district courts that special jury interrogatories can play an important and even essential role in the proper disposition of a qualified immunity defense. Although the refusal to give the requested jury interrogatories was not reversible error in view of the particular circumstances of this case, including the nature of the constitutional violation claimed, the jury instructions, and the jury's answers to the interrogatories that were submitted, it will not always be so. Sometimes it will be reversible error not to submit requested jury interrogatories that will aid the district court in properly deciding a qualified immunity issue that survives the jury's verdict on the merits. For that reason, courts should proceed with caution before denying requested interrogatories that go to the factual circumstances of a case in which a qualified immunity defense has been asserted.

## C.  PUNITIVE DAMAGES

The defendants' next contention is  that the district court erred by awarding punitive damages to Johnson.  They argue that under the Prison Litigation Reform Act of 1996 ("PLRA"), punitive damages are a form of "prospective relief" which cannot be allowed in the circumstances of this case.

The PLRA provides strict limitations on the availability of "prospective relief:"

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

Johnson responds  that the limitations on prospective relief under § 3626(a)(1)(A) are not applicable to his § 1983 action because it is not a "civil action with respect to prison conditions."  That term is defined as follows:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2). Johnson's § 1983 action is a "civil action" within the meaning of that provision; the issue, then, is whether excessive force is a "prison condition" for purposes of § 3626(g)(2).

In <u>Higginbottom v. Carter</u>, 223 F.3d 1259 (11th Cir. 2000), we examined whether an excessive force claim was subject to the "exhaustion requirements" of the Prison Litigation Reform Act of 1995 ("PRLA"). The statute at issue provided that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because that exhaustion provision itself does not provide a definition of the term "prison conditions," we looked to the definition contained in 18 U.S.C. § 3626(g)(2), the statutory provision at issue in this case. Following decisions of the Sixth and Third Circuits, <u>see</u> <u>Freeman v. Francis</u>, 196 F.3d 641, 643-44 (6th Cir. 1999); <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000), <u>aff'd on other grounds</u>, 531 U.S. 731, 121 S. Ct. 1819 (2001), we held that the term "prison conditions," as used in 42 U.S.C. § 1997e(a), includes excessive force claims because the term "prison conditions" as it is used in 18 U.S.C. § 3626(g)(2) includes such claims. <u>Higginbottom</u>, 223 F.3d at 1260-61; <u>see also</u> <u>Freeman</u>, 196 F.3d at 643 ("It is generally recognized that when Congress

uses the same language in two different places in the same statute [the PRLA], the words are usually read to mean the same thing in both places.") (citations omitted); Booth, 206 F.3d at 294 (same).[3]

Thus, an essential premise of our holding in the Higginbottom case was that excessive force claims are "prison conditions" claims for purposes of § 3626(g)(2).  We reiterate that holding here.   It follows that the limitations on prospective relief contained in § 3626(a)(1)(A) are applicable to Johnson's § 1983 action because it is a "civil action with respect to prison conditions."

Johnson next argues that the limitations on prospective relief under § 3626(a)(1)(A) do not limit the award of punitive damages,  because punitive damages are not "prospective relief."  "Prospective relief" is defined in the statute as "all relief other than compensatory monetary damages."[4]  18 U.S.C. 3626(g)(7). The plain language of that definition provision is clear, and where the statutory language provides an explicit definition we apply it even if it differs from the

---

[3]Judge Noonan dissented in the Booth case on the question of whether "prison conditions" embraces an assault on a prisoner, 206 F.3d at 300 - 03 (Noonan, J., concurring in part and dissenting in part), and his dissenting position was followed in Nussel v. Willette, 224 F.3d 95 (2d Cir. 2000).  Nonetheless, sitting as a member of this circuit he feels compelled to follow Eleventh Circuit precedent on the point. See Cohen v. Office Depot, Inc., 204 f.3d 1069, 1076 (11th Cir. 2000)(later panel bound by holding of an earlier one regardless of whether later panel's members believe that holding is correct).

[4]"Relief" is defined expansively as "all relief in any form that may be granted or approved by the court, and includes consent decrees but does not include private settlements." 18 U.S.C. § 3626(g)(9).

33

term's ordinary meaning. Stenberg v. Carhart, 530 U.S. 914, 942, 120 S.Ct. 2597, 2615 (2000). Congress has told us that all relief other than compensatory monetary damages is "prospective relief." Punitive damages are relief other than compensatory monetary damages. Therefore, punitive damages are prospective relief. Cf. Snapp v. Unlimited Concepts, Inc., 208 F.3d 928, 934 (11th Cir. 2000) ("Punitive damages are generally available for willful or intentional violations of a common law or statutory duty, and their purpose is to punish and deter the wrongdoer rather than to compensate the aggrieved party. Therefore, punitive damages would be out of place in a statutory provision aimed at making the plaintiff whole.").

Section 3626(a)(1)(A) provides in its opening sentence that any prospective relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs," and then goes on to provide that prospective relief must not be granted "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." Because Congress has provided that punitive damages are prospective relief, we must give the requirements of § 3626(a)(1)(A) some meaning in the context of punitive damages. We think those requirements mean

34

that a punitive damages award must be no larger than reasonably necessary to deter the kind of violations of the federal right that occurred in the case. They also mean that such awards should be imposed against no more defendants than necessary to serve that deterrent function  and that they are the least intrusive way of doing so. Many factors may enter into that determination.  For example, the number of excessive force violations an individual defendant or institution has had might affect whether punitive damages were necessary, and if so, the amount required  to deter future violations.  After considering all the facts and circumstances,  the district court in this case should have determined whether it was reasonably necessary that  Breeden be ordered to pay $30,000 and that Gomez be ordered to pay $15,000 (beyond the amount of the compensatory damages) in order to deter future Eighth Amendment excessive force violations by them or others at this institution.   We cannot tell whether it did.

In its order denying the defendants' motion for judgment as a matter of law, or, in the alternative, for a new trial, the district court assumed for the sake of argument that punitive damages were a form of prospective relief, and stated without elaboration that the jury's award of punitive damages was "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the

Federal right."  This conclusory language was not enough to satisfy the requirements of 18 U.S.C. § 3626 (a)(1)(A).  In Cason v. Seckinger, 231 F.3d 777, 784-85 (11th Cir. 2000), we considered the requirement in § 3626(b)(3) of the PLRA that prospective relief terminate unless a judge makes findings that it "extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation."  We held that statutory provision, which is closely analogous to § 3626(a)(1)(A),  requires  more than a conclusory statement couched in the statutory language.  The same applies to the findings mandated by § 3626(a)(1)(A). While there may not be much to say about the factors that a district court is required to consider, the court should discuss those factors and enter findings that are as specific to the case as the circumstances permit.

## D.  ATTORNEY'S FEES AND COSTS

As the prevailing party in this § 1983 action, Johnson moved under 42 U.S.C. § 1988 for an award of attorney's fees and expenses.[5]  The district court

---

[5]Section 1988 provides, in relevant part:

In any action or proceeding to enforce a provision of [42 U.S.C. § 1988], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . .

42 U.S.C. § 1988(b).

36

granted the motion awarding Johnson $73,137.00[6] in attorney's fees and $12,131.80 in costs and expenses. The defendants contend that the district court erred by failing to properly limit the award to fees and expenses "directly and reasonably incurred in proving an actual violation of the plaintiff's rights," as required by 42 U.S.C. § 1997e(d)(1)(A).[7]

We review an award of attorney's fees by the district court only for an abuse of discretion. See Gray v. Lockheed Aeronautical Sys. Co., 125 F.3d 1387, 1389 (11th Cir.1997). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." In re Hillsborough Holdings Corp., 127 F.3d 1398, 1401 (11th Cir.1997) (internal citation and quotation omitted).

---

[6]The district court reduced that award, however, pursuant to 42 U.S.C. § 1997e(d)(2), by $17,500.

[7]Section 1997e(d)(1)(A) provides, in relevant part:

d) Attorney's fees

(1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that--

(A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title . . .

42 U.S.C. § 1997e(d)(1)(A).

The district court correctly noted that § 1997e(d)(1)(A) required it to limit the amount of fees and expenses awarded to a prisoner under § 1988 to those which are "directly and reasonably incurred in proving an actual violation of the plaintiff's rights." 42 U.S.C. § 1997e(d)(1)(A). But it then stated that "[i]n doing so, the court is guided by the common lodestar method of multiplying a reasonable hourly rate by the <u>hours reasonably expended on the case</u>." (emphasis added) That is not the proper legal standard, because it ignores the limitations set forth in § 1997e(d)(1)(A). <u>See</u> <u>Walker v. Bain</u>, 65 F.Supp.2d 591, 596 (E.D. Mich. 1999) ("Although the lodestar method provides the correct approach for determining a reasonable attorney fee under § 1988 generally, the amount which may be awarded in a case brought by a prisoner is now capped. Specifically, both the availability of fees and their amount have been restricted by . . . [42 U.S.C. § 1997e(d)]").

Johnson submitted documentation indicating that his attorneys spent a total of 1,029.1 hours on "his case." The district court found that the hours claimed were "reasonable" and awarded attorney's fees for all 1,029.1 hours. However, the district court failed to restrict the award, as required by § 1997e(d)(1)(A), to only those hours directly and reasonably incurred in proving a violation of Johnson's rights under the Eighth Amendment by Breeden and Gomez, the only claim and defendants against whom he was successful.

38

Instead, the district court awarded payment for time spent on Johnson's unsuccessful claims (claims where Johnson did not "prov[e] an actual violation of the plaintiff's rights protected by a statute"). Included in the category of unsuccessful claims are all of the claims Johnson brought against Harrison, Parker, and Evans, all of his due process and malicious prosecution claims, and all of his claims against Luciano. There is no finding in the record about, and no indication that an inquiry was made concerning, whether the work done and expenses incurred on the unsuccessful claims were "directly and reasonably incurred" in proving that Breeden and Gomez violated Johnson's Eighth Amendment rights, the only claim Johnson proved. Johnson is only entitled to payment for work and reimbursement of expenses that meet that standard. In reaching this holding, we do not foreclose the possibility that some of the same time spent and expenses incurred in connection with defendants and claims on which Johnson was not successful also may have been directly and reasonably spent and incurred in proving the claims against defendants for which he was successful. For example, some of the time spent preparing a case against Defendant Luciano might have been reasonably spent preparing a case against Defendants Breeden and Gomez if Luciano had never been in the case. If so, Johnson is entitled to be paid for the

39

that time.[8]

Therefore, we agree with the defendants that § 1997e(d)(1)(A) compels the conclusion that the district court abused its discretion when it awarded attorney's fees and expenses not directly and reasonably incurred in successfully proving the Eighth Amendment excessive force claim against Breeden and Gomez. We will remand the case to the district court so that it can re-calculate the award of attorney fees and expenses in compliance with that provision.[9]

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment insofar as it awards Johnson compensatory damages, but we VACATE the award of punitive damages and the award of attorneys fees and expenses, and REMAND the case for further proceedings consistent with this opinion.

---

[8]In addition to seeking payment for work done in this federal litigation on his unsuccessful claims, Johnson also sought and was paid for some work done in connection with state court litigation between the parties that preceded this federal court case. In his motion for attorney's fees, Johnson indicated that the only state court work for which he was seeking attorney's fees and expenses was work "relevant to both cases." Relevance to the federal case is not the standard. The work must be "directly and reasonably incurred" in proving the violation that was established in federal court.

[9]Given our disposition of the attorney's fees issue on this ground, we need not examine at this time the other errors in the award alleged by defendants.