**Willie H. BOZEMAN, as legal representative of the ESTATE OF Mario HAGGARD, deceased, Plaintiff,**

v.

**Silas ORUM, III, et al., Defendants.**

No. CIV.A. 00–T–1368–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 9, 2004.

G. William Gill, Joseph C. Guillot, McPhillips, Shinbaum & Gill, G. Griffin Sikes, Jr., Montgomery, AL, for plaintiff.

Constance Caldwell Walker, Thomas T. Gallion, III, Haskell Slaughter Young & Gallion LLC, Montgomery, AL, John W. Adams, Jr., Pamela R. Higgins, Christina H. Jackson, Thomas Means Gillis & Seay PC, Montgomery, AL, for defendants.

### ORDER

MYRON H. THOMPSON, District Judge.

This case is currently before the court on two motions to reconsider the summary-judgment order issued by this court on April 12, 2002 (Doc. no. 277), *Bozeman v. Orum*, 199 F.Supp.2d 1216 (M.D.Ala. 2002). For the reasons explained below, the motion filed by defendants Silas Orum, III, Jeffrey Sanderson, James Thrift, Darryl N. Wood, and Clarence Wilson will be denied, and the motion filed by plaintiff Willie H. Bozeman will be granted in part.

### I. DEFENDANTS' MOTION TO RECONSIDER

Officers Orum, Sanderson, Thrift, Wood, and Wilson ask this court to reconsider its denial of their summary-judgment motion on the plaintiff's claim of deliberate indifference to serious medical needs. For the reasons outlined in the summary-judgment order itself, this court declines to alter its ruling on this claim.

### II. PLAINTIFF'S MOTION TO RECONSIDER

■ Having considered the plaintiff's motion and having reconsidered the evidence submitted on summary judgment, the court is convinced that the excessive-force claim against the officers should proceed to trial. The eyewitness testimony of Joe Lee Falls, highlighted by the plaintiff in the motion to reconsider, does indeed raise a jury question as to whether the force used by the officers clearly exceeded constitutional limits.

The Falls deposition testimony was mistakenly discounted by this court in its ruling on summary judgment. The court assumed, incorrectly, that Falls's statement fell into the category of unsworn witness statements that was ruled inadmissible in the opening pages of the summary-judgment order. However, it appears that Falls's recollection is not only memorialized as part of the Alabama Bureau of Investigation file, but also by a deposition taken by the plaintiff's attorneys before this case was filed. This deposition testimony, filed in support of the original summary-judgment motion, is admissible at summary judgment and will now be fully considered by the court.[1]

---

1. Even though the deposition transcript is not signed by Falls and even though none of the attorneys for the defendants were present at the deposition, it is still admissible on summary judgment. *See, e.g., Land v. Midwest Office Technology*, 114 F.Supp.2d 1121, 1137 (D.Kan.2000); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 323–24 (9th Cir.1991), *cert. denied*, 506 U.S. 972, 113 S.Ct. 460, 121 L.Ed.2d 369 (1992).

On the night of the incident, Falls was an inmate trustee who volunteered to help mop up the water streaming from Haggard's cell. During the time that the officers were in the cell, Falls had a clear view of the interior. Falls stated under oath that the officers eventually managed to get Haggard down on the bunk in his cell. Haggard continued to resist, and all five officers were trying to hold Haggard down and get handcuffs on him. During this continued struggle, according to Falls, Officer Sanderson was standing over Haggard's head and pushing Haggard's head into the mattress on the bunk with his hands. As they were holding Haggard down, one of the officers asked him "You had enough? Are you going to quit?," to which Haggard responded "Yeah, I give. I've had enough. I've had enough." One of the officers then said "Oh, we don't think you've had enough," and all of the officers kept holding Haggard down and pressing him into the mattress. Falls stated that soon after that, he heard a sound like all the wind or breath just went out of Haggard.

## A. Constitutional Violation

■ Construing this evidence in the light most favorable to the plaintiff, Falls's testimony creates a jury-triable issue as to the excessive-force claim against the officers. As discussed in the summary-judgment order, the use of force that amounts to punishment against a pretrial detainee is prohibited by the fourteenth amendment. *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989); *Vineyard v. County of Murray, Georgia*, 990 F.2d 1207, 1211 (11th Cir.1993). The testimony just described indicates that force may have been used for the purpose of punishment and not for any legitimate detention purpose. Falls's testimony creates an issue of fact as to whether the officers, after hearing that Haggard wished to give up, continued to apply force and, particularly, to hold his head in the mattress, after Haggard had ceased to resist.

## B. Qualified–Immunity Analysis

Crediting the testimony of Falls and the other evidence presented by the plaintiff on summary judgment, it is apparent that the officers acted with an extremely unlawful intent. Given the nature of the harm inflicted and the manner in which it was inflicted, the conduct of the officers in this case rises above just a purpose to punish, as is sufficient to find a fourteenth-amendment violation. Rather, the suffocation of an inmate after that inmate has expressed his desire to surrender is more aptly characterized as the infliction of harm maliciously and sadistically, for the very purpose of causing harm. The extreme state of mind with which the officers acted in this case renders their conduct beyond the bounds of qualified immunity.

■ Due to recent Eleventh Circuit precedent, there is some question as to whether qualified immunity is ever appropriate for a defendant who has committed an excessive force violation under the fourteenth amendment, as the subjective element required in finding a constitutional violation may also preclude the applicability of qualified immunity. *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). As qualified immunity in some sense gauges the ability of an official to determine whether his conduct exceeds constitutional boundaries, it should be applied sparingly, if at all, in situations where an official acts with a barred intent, as the forming of the intent itself indicates some knowledge of wrongdoing.

■ Excessive-force claims fall under one of three constitutional provisions, depending on the nature of the victim when the force was allegedly used: if the victim is an arrestee, the fourth amendment applies; if a prisoner, the eighth amendment;

and if a pretrial detainee, as in this case, the fourteenth amendment. Under the fourth amendment, force is excessive when the amount of force used is unreasonable under the totality of the circumstances. *Id.* at 1321; *see also Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). There is no requisite analysis of the subjective intent of the defendant necessary to find a constitutional violation; rather, the constitutional analysis is entirely objective. A defendant officer could use force against an arrestee that is later found to be objectively unreasonable under the circumstances and, therefore, in violation of the fourth amendment, but the officer could also be found not to have violated clearly established law and, therefore, be entitled to qualified immunity. *Johnson,* 280 F.3d at 1321.

 Under the eighth amendment, force is excessive if it is inflicted maliciously or sadistically for the very purpose of causing harm. *Johnson,* 280 F.3d at 1321–22. It is clearly established law that to act with this specific intent to harm always violates the eighth amendment. *Id.* Effectively, the slightest intrusion into the zone of unconstitutional conduct under the eighth amendment violates clearly established law. Therefore, once an eighth-amendment excessive-force violation has been established, "there is no room for qualified immunity." *Id.* at 1321; *see also Skrtich v. Thornton,* 280 F.3d 1295, 1301 (11th Cir.2002). "It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in

which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson,* 280 F.3d at 1321.

The fourteenth amendment, as above discussed, protects pretrial detainees from force inflicted for the purpose of punishment. *Johnson,* 280 F.3d at 1320; *see also McMillian v. Johnson,* 88 F.3d 1554, 1565 (11th Cir.1996). Acting with a clear purpose to punish a pretrial detainee is outside the bounds of constitutional conduct. *McMillian,* 88 F.3d at 1565–66. However, it is unclear whether the Eleventh Circuit would say that a purpose to punish a pretrial detainee renders qualified immunity inappropriate in all circumstances—perhaps there is space for qualified immunity where punishment is but one purpose of the force inflicted, when the purpose to punish may be vindicated, in a sense, by countervailing purposes also held and acted upon by the official, or by the exigencies of the situation.

This court does not have to reach that question, as the officials in this case can be said to have acted with the higher, "extreme" subjective element required to find a violation of the eighth amendment, such that qualified immunity is clearly inappropriate. As acting with this extreme intent against a convicted prisoner leaves no room for qualified immunity, it makes sense that to act with this same intent against a pretrial detainee, cloaked with additional protections given his presumptively innocent status pending conviction, also renders qualified immunity inapplicable.[2]

---

**2.** Additionally, the Eleventh Circuit has held in a variety of contexts that officers may not continue to use force or inflict pain after an arrestee or inmate has ceased to resist or has become incapacitated. *See, e.g., Skrtich v. Thornton,* 280 F.3d 1295 (11th Cir.2002); *Slicker v. Jackson,* 215 F.3d 1225 (11th Cir. 2000); *see also Valencia v. Wiggins,* 981 F.2d

1440 (5th Cir.1993). Haggard's statements may be construed as an intent to surrender, and the officers' continued use of force, to the point of Haggard's unconsciousness, in these circumstances violates this clearly established law. Again, by a different analytical tilt, qualified immunity is inappropriate.

Falls's testimony creates an issue of fact as to whether the officers, after hearing that Haggard wished to give up, continued to apply force and, particularly, to hold his head in the mattress, after Haggard had ceased to resist. Given the extreme intent that can be perceived by the officers' actions, they are not entitled to qualified immunity at this stage.

Accordingly, it is ORDERED as follows:

(1) The motion to reconsider, filed by defendants Silas Orum, III, Jeffrey Sanderson, James Thrift, Darryl N. Wood, and Clarence Wilson on April 26, 2002 (Doc. no. 233), is denied.

(2) The motion to reconsider, filed by plaintiff Willie H. Bozeman on April 18, 2002 (Doc. no. 230), is granted to the extent that the excessive-force claim against defendants Orum, Sanderson, Thrift, Wood, and Wilson will be allowed to proceed to trial.