[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15514

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 28, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00610-CV-FTM-34-SPC

VICTOR SCROGGINS,

Plaintiff-Appellant,

versus

MATTHEW D. DAVIS,
KENNETH W. TOWLER,
OLUWASHOLA K. LAWAL,
KEITH A. HARMON,
JEFFREY A. BROWN, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 28, 2009)

Before CARNES, FAY and ALARCON,[*] Circuit Judges.

PER CURIAM:

Victor Scroggins appeals from the district court's grant of summary judgment against all of the claims raised in his 42 U.S.C. § 1983 complaint.

Scroggins contends that the use of force to subdue him was constitutionally excessive in violation of his Eighth Amendment rights. The standard we apply to that claim is whether the force was applied "in a good faith effort to maintain or restore discipline" or instead "maliciously and sadistically for the very purpose of causing harm." Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002). The existence of "a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives" is not enough to support a claim of excessive force in an institutional setting. Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (citing Whitley v. Albers, 475 U.S. 312, 322, 106 S.Ct. 1078, 1086 (1986)). And the Supreme Court has instructed us that "we must give a wide range of deference to prison officials acting to preserve discipline and security." Whitley, 475 U.S. at 321-22, 106 S.Ct. at 1085 (1986).

The undisputed evidence is that jail officials reasonably regarded Scroggins

---

[*] Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by designation.

as a high-risk, dangerous inmate, with a history of a prior escape. While being escorted from his cell to a place where he could be searched for contraband, Scroggins disobeyed a direct order and got involved in a scuffle with the guards, during which he made an aggressive move toward one of them. In those circumstances, the force used to subdue Scroggins was not excessive. No reasonable factfinder could find that Scoggins' ribs were broken, as he claims. There is no evidence to corroborate his own conclusory statement to that effect, and his failure to seek any medical treatment at all afterwards is inconsistent with his having broken ribs. See Bennett v. Parker, 898 F.2d 1530, 1534 (11th Cir. 1990) (discounting plaintiff's claim of injury as "only a conclusory allegation, unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses").

The use of one burst of oleoresin capsicum (O.C.) spray against Scroggins during the altercation was not excessive force. See Danley v. Allen, 540 F.3d 1298, 1303 (11th Cir. 2008) ("[P]epper spray is an accepted non-lethal means of controlling unruly inmates . . . ."); id. at 1307 ("If there were nothing before us but the initial use of pepper spray . . . we would readily conclude that there was no Fourteenth Amendment violation."). Nor did placing Scroggins in four-point restraints for three hours and fifteen minutes amount to excessive force. See

3

Williams v. Burton, 943 F.2d 1572, 1576 (11th Cir. 1991) (rejecting claim that putting a dangerous inmate in four-point restraint for twenty-eight and one-half hours was excessive force, and explaining "the courts give great deference to the actions of prison officials in applying prophylactic or preventative measures intended to reduce the incidence of riots and other breaches of prison discipline").

Scroggins argues that our Danley decision establishes that continuing the application of force after the inmate is subdued amounts to the application of excessive force. But Danley was not a restraint case and it did not involve a dangerous, high risk inmate. It involved a DUI arrestee and the deliberate decision to allow the effects of pepper spray to continue to cause him pain and discomfort for the guards' sadistic pleasure. See Danley, 540 F.3d at 1305. The Constitution does not require prison officials to release from restraint a dangerous inmate who has lashed out at them simply because he has stopped lashing out for the time being. Indeed, given that four-point restraints make it difficult for an inmate to engage in any kind of physical misbehavior, Scroggins' position would mean that four-point restraints could never be continued for longer than a few minutes at a time. We know from the Williams decision that is not the law.

Scroggins' attempt to draw an analogy to Danley based on the fact that none of the defendants tried to wash the O.C. spray off of him fails. The only time

4

Scroggins mentioned to anyone feeling any discomfort from the O.C. spray was when he told the nurse who checked him immediately after he was put in four-point restraints, which was soon after he had been sprayed. One would expect some discomfort from the spray soon after it had been administered. Scroggins was checked every fifteen minutes thereafter during the time he was restrained but never again did he mention the slightest discomfort from the O.C. spray. He argues that the reason he did not complain about the effects of the spray was that he feared retaliation. There is no evidence in the record that Scroggins had any reasonable basis for that fear, and even if he did it would not change the fact that the defendants did not know that Scroggins was suffering any continuing discomfort from the spray. An inmate cannot keep his suffering to himself and then complain about jailers not doing anything to alleviate it.

The fact that the defendants in this lawsuit were never told by the nurse, or anyone else, that Scroggins was feeling any pain or discomfort from the spray distinguishes it from Danley. In that case the plaintiff screamed and cried out to the jailers, and the lingering effects of the pepper spray on him were so bad that other inmates complained to the jailers that it was causing them discomfort. Danley, 540 F.3d at 1304. Scroggins screamed while being carried to a holding cell after being sprayed, but there is no indication that the defendants interpreted

them as screams of pain rather than defiant outbursts. The plaintiff in Danley, unlike Scroggins, repeatedly pleaded for medical treatment during a period of twelve to thirteen hours. Id. at 1304–05.

In Danley when the plaintiff "screamed and cried to the three jailers that he could not breathe, and begged to be let out . . . . the jailers laughed at [him] and made fun of him." Id. at 1304. Among other things, two of them "held their hands to their necks in a 'mock-choking' gesture." Id. at 1304, 1309. That response helped convince us that the jailers in Danley had acted, or failed to act, "maliciously and sadistically for the very purpose of causing harm." Id. at 1309. That did not happen in this case.

Scroggins points to his evidence that when he asked what he had done to deserve being sprayed and put into four-point restraints, the sheriff replied "That's what you get for swinging on one of my deputies, asshole." That statement cannot reasonably be viewed as evidence of sadistic or malicious purpose but instead is an accurate description of fact. Scroggins wanted to know what he had done to justify what was being done to him, and the sheriff told him. Nor do we think a factfinder reasonably could infer a sadistic purpose from the fact that once the officers finally got Scroggins subdued and restrained, they cheered and gave each other "high fives." The only reasonable inference from that

6

conduct was that they were relieved to the point of jubilance at having gotten a tough and dangerous task done without any of them being hurt.

In Danley, we noted that "subjecting a prisoner to special confinement that causes him to suffer increased effects of environmental conditions," such as pepper spray, "can constitute excessive force." Id. at 1308. The plaintiff in that case was confined in a small, poorly ventilated cell after being pepper sprayed. Id. at 1304. Unlike the plaintiff in Danley, Scroggins has produced no evidence that the holding cell in which he was restrained after being sprayed was small or poorly ventilated. And unlike the situation in Danley, Scroggins was not confined in the same room where the spraying occurred.

For all of these reasons, we conclude that the district court properly granted summary judgment to the defendants on Scroggins' excessive force claims. It necessarily follows that the grant of summary judgment on the remaining claims, including the failure to intervene claims and the official capacity claims challenging the constitutionality of policies and procedures at the Collier County Jail, was also proper. We also conclude that the district court did not abuse its discretion in failing to grant Scroggins' motions to amend his complaint.

AFFIRMED.