[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 12, 2010
JOHN LEY
CLERK

No. 09-13968
Non-Argument Calendar

_____

D. C. Docket No. 07-00331-CV-F-S

TIMOTHY COUNCIL,

Plaintiff-Appellee,

versus

DAVE SUTTON, Sheriff,
RICHARD B. MOSS, Captain,

Defendants,

GLENN SHELTON, Deputy,
ALSTON REDMAN, Deputy,
NEAL BRADLEY,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(February 12, 2010)

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Deputies of the Coffee County, Alabama Sheriff's Department, Neal Bradley, Alston Redman, and Jeffery Shelton[1] (collectively the "Deputies"), appeal the district court's denial of their motion for summary judgment on the grounds of qualified immunity against Timothy Council's ("Council") *pro se* civil rights action filed pursuant to 42 U.S.C. § 1983. Through this interlocutory appeal, the Deputies argue that their motion for summary judgment should have been granted because Council failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, failed to state a cause of action under an official capacity theory, and lacked standing to bring a claim. Additionally, the Deputies argue that they were entitled to qualified immunity on their motion for summary judgment because they did not violate Council's clearly established rights.

After reviewing the record and the parties' briefs, we do not have jurisdiction to review the Deputies' challenges to Council's failure to exhaust administrative remedies, allegations of official capacity claims, or standing on

---

[1] Council, in his complaints, refers to Deputies Shelton and Redman as "Glenn Shelton" and "Alston Redman." However, Deputies Shelton's and Redman's names have been corrected to reflect the names as provided by the defendants.

interlocutory appeal, and we affirm the denial of qualified immunity for the Deputies.

## I. BACKGROUND

Council, an inmate at the Coffee County Jail, filed a complaint against, *inter alia*, Deputies Redman and Shelton pursuant to 42 U.S.C. § 1983, alleging that they violated his constitutional rights at the Coffee County Jail. Council claims that in March 2007, Deputies Redman and Shelton falsely accused him of an incident that did not occur and then approached his cell "full of anger and rage, with shotguns and tassers [sic], screaming as they were running up the steps, repeating, [']you want to throw piss, you want to throw piss.[']" D.E. 1 at 3. At this time, Council alleged that he was fearing for his life in the corner of his cell, already on his knees with his hands in the air. *Id.* at 4. Council alleged that the Deputies "had the shotgun and the tassers [sic] pointed at [him]." *Id.* He further alleged that Deputy Redman shot him in the upper part of his leg with the shotgun, and then Deputy Shelton shot him with the taser and "shocked [him] repeatedly while [he] was laying on the floor." *Id.* Council then moved under the bed for protection from the gunshots while getting tased. He heard an officer tell him to get out from under the bed, and Deputy Shelton then shot him in the ribs, causing Council to move out from under the bed. Council alleged that once he got out

3

from under the bed, the Deputies took him to another room where he was forced to endure emotional abuse. *Id.* Council also attached to the complaint a grievance form completed by a fellow inmate stating that Council was severely injured as a result of Deputy Shelton's conduct and that Council needed medical attention. *Id.* at ex. 1.

In an amended complaint, Council added Deputy Bradley as the individual who unjustifiably shot him with the taser "repeatedly" and continued to do so until Council was nearly unconscious. D.E. 6 at 2. Council clarified that Deputy Bradley, not Deputy Redman, continuously tased him, and Deputy Shelton shot him while he was on the floor. *Id.* at 2–3. Finally, Council alleged, *inter alia*, that Deputies Shelton, Redman, and Bradley violated his "human right[s]." *Id.* at 3. However, Council did not provide any specific allegations regarding Deputy Redman outside of this generalized claim. *See id.* Council attached a personal statement, which followed the allegations listed in the original complaint. *Id.* at ex. 1 at 2. In this statement, Council did not include any allegations regarding Deputy Redman. *See id.* at 2–3.

A magistrate judge ordered the Deputies to file a special report and answer. The Deputies asserted that they were entitled to qualified immunity because they were acting within their discretionary authority, and they did not violate Council's

4

constitutional rights. D.E. 12 at 13–21. In particular, the Deputies contended that Council failed to comply with their orders to get on the ground, and instead, Council hid under his bed. Based on this allegation of insubordination, the Deputies argued that their use of a taser and shotgun filled with beanbag rounds was necessary in the context of a jail riot. Further, the Deputies stressed that Council received only *de minimis* injuries. Finally, the Deputies contended that Council failed to allege that Deputy Redman was personally involved in the alleged abuse.

The Deputies attached various documents to the special report, including Council's Jail Intake Sheet and affidavits from the Sheriff of Coffee County, each of the Deputies, and two other Sheriff's Department officers. The Sheriff's affidavit stated that Coffee County was struck by a tornado two days before the incident, and the Sheriff's Department was actively involved in recovery operations when the jail riot broke out. The Sheriff's affidavit stated that after he arrived at the jail in response to the riot, he was informed that an inmate had thrown urine on a deputy. Deputy Shelton's affidavit stated that when he arrived at Council's cell to take Council's cellmate into custody for throwing urine, Council failed to comply with his orders to get on the floor. As a result, Deputy Bradley tased Council once, causing Council to hide under a bunk, where he began to move

various items that Shelton believed could have been weapons because a shank had been discovered in Council's section of the jail a week earlier. Shelton also fired two beanbag rounds from the shotgun, once before Council got under the bed, and another time when Council was under the bed. The affidavits of Deputies Bradley and Redman, as well as two other Sheriff's Department officers, corroborated Shelton's account of the events. Additionally, in his affidavit, Deputy Bradley admitted that he used the taser multiple times because Council continued to move under the bed, and Deputy Bradley believed that the taser was not working. In a declaration by Dr. Henry Cochran, the doctor who examined Council, Dr. Cochran described Council's injuries as extremely minor and noted that temporary numbness was a common symptom experienced by those subjected to tasers, and no treatment was necessary.

In his final report and recommendation, the magistrate judge concluded that Council set forth facts sufficient to establish a constitutional violation and recommended denying the Deputies' motion for summary judgment on the grounds of qualified immunity. The district court overruled the objections to the magistrate judge's report and recommendation and adopted the report and recommendation.

## II. JURISDICTION

6

The Deputies assert that we have jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1291 and the Supreme Court's holding in *Mitchell v. Forsyth*, because the appeal is from a decision denying qualified immunity as a matter of law from a motion for summary judgment. 472 U.S. 511, 530 (1985). We have an obligation to review *sua sponte* whether we have jurisdiction at any point in the appellate process. *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) (per curiam) (citation omitted). We review our subject matter jurisdiction *de novo*. *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2005) (per curiam) (citation omitted).

To be appealable, an order must either be final or fall within a specific class of interlocutory orders that are made appealable by statute or jurisprudential exception. 28 U.S.C. §§ 1291, 1292; *Atl. Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.*, 890 F.2d 371, 375–76 (11th Cir. 1989). A final decision within the meaning of 28 U.S.C. § 1291 is "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983) (quotation and citation omitted). In *Mitchell*, the Supreme Court held "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291

7

notwithstanding the absence of a final judgment." 472 U.S. at 530. The Supreme Court recognized the exception from the final judgment rule for qualified immunity under the collateral order doctrine. *Id.* at 529–30. The collateral order doctrine permits appeals if the district court's order: (1) "conclusively determine[s] the disputed question;" (2) "resolve[s] an important issue completely separate from the merits of the action;" and (3) is "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978) (citation omitted).

Nevertheless, even though we may have jurisdiction over a claim for qualified immunity, this does not necessarily extend jurisdiction to all other issues that do not separately meet the jurisdictional requirements. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 50–51 (1995). Therefore, we have jurisdiction to review the denial of qualified immunity because the Deputies challenge that the law was not clearly established, which is a question of law. However, we *sua sponte* dismiss the Deputies' challenges to the denial of their motion for summary judgment regarding Council's failure to exhaust his administrative remedies under the PLRA, his failure to allege official capacity claims, and his lack of standing because these challenges are not intertwined with the denial of qualified immunity and do not meet the *Cohen* test for interlocutory review under the collateral order

8

doctrine. *See Carringer v. Tessmer*, 253 F.3d 1322, 1323 (11th Cir. 2001) (per curiam) (finding that the issue of standing is not immediately reviewable on interlocutory appeal); *Simon v. Pfizer Inc.*, 398 F.3d 765, 771 (6th Cir. 2005) (finding that failure to exhaust administrative remedies is not immediately appealable); *Stewart v. Okla.*, 292 F.3d 1257, 1260 (10th Cir. 2002) (same).

## III. DENIAL OF QUALIFIED IMMUNITY

The Deputies assert that they were entitled to qualified immunity because they did not violate Council's rights by using excessive force. They argue that there were no laws or materially similar cases demonstrating that their conduct was unlawful at the time the allegedly unlawful acts occurred. Deputy Redman also argues that Council did not plead a failure-to-intervene claim, and as such, the district court erred in failing to grant him summary judgment.

We review the denial of qualified immunity *de novo*, "resolving all issues of material fact in favor of the non-moving party." *Bryant v. Jones*, 575 F.3d 1281, 1294 (11th Cir. 2009).

The doctrine of qualified immunity "shields public officials from suits against them in their individual capacities for torts committed while performing discretionary duties unless the tortious act violates a clearly established statutory or constitutional right." *Zivojinovich v. Barner*, 525 F.3d 1059, 1071 (11th Cir. 2008)

9

(per curiam) (citation omitted). In order to receive qualified immunity, officials must demonstrate that they were engaged in a discretionary function at the time of the allegedly unlawful act. *Bryant*, 575 F.3d at 1295 (citation omitted). Once this is done, the burden shifts to the plaintiff to establish that the officials were not entitled to qualified immunity. *Id.* (citation omitted). This requires the plaintiff to demonstrate that: (1) the officials violated a constitutional right, and (2) the constitutional right was clearly established at the time of the alleged wrongful act. *Id.* (citation omitted). The reviewing court can use its discretion in determining which of the two prongs to address first. *Pearson v. Callahan*, 555 U.S. __, __, 129 S. Ct. 808, 818 (2009). The operative facts for this analysis are taken from the plaintiff's complaint and the plaintiff's response to the defendants' motion for summary judgment. *See Crenshaw v. Lister*, 556 F.3d 1283, 1291 (11th Cir. 2009) (per curiam).

"Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . . ." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). Nevertheless, the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment, which applies to claims for convicted prisoners, is the same. *Id.* Under the Eighth Amendment, the use of force is "legitimate in a custodial setting

10

as long as it is applied in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (alteration in original) (quotation and citation omitted).

The Supreme Court has stated that prison administrators should be given wide-ranging deference in their decisions regarding prison security, especially when confronting actual unrest, such as a riot. *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986) (citation omitted). However, officials may not use force against a prisoner who has already been subdued because "[t]he use of force must stop when the need for it to maintain or restore discipline no longer exists." *Skrtich*, 280 F.3d at 1304 (citation omitted); *see also Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive."). Finally, "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) (citation omitted).

In terms of the second prong of the qualified immunity analysis, "[f]or a

'right' to be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right." *Rodgers v. Horsley*, 39 F.3d 308, 310 (11th Cir. 1994) (per curiam) (quotation and citation omitted) (emphasis in original). Additionally, we have held that "a defense of qualified immunity is not available in cases alleging excessive force . . . because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution." *Skrtich*, 280 F.3d at 1301 (citation omitted). This is because the use of excessive force sadistically and maliciously for the very purpose of causing harm "is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002).

In determining whether malicious and sadistic intent existed, we consider: (1) the need for the application of force; (2) the relationship between the need for force and the amount of force used; (3) "the extent of the resulting injury;" (4) the threat reasonably perceived by the responsible officials; (5) and "efforts made to temper the severity of a forceful response." *Danley*, 540 F.3d at 1307 (quotation and citation omitted). From these factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced

12

such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Skrtich*, 280 F.3d at 1300–01 (quotation and citation omitted).

First, taking Council's allegations as true, he has sufficiently alleged that the Deputies violated his Fourteenth Amendment rights. *See Byrant*, 575 F.3d at 1295; *Crenshaw*, 556 F.3d at 1291. Under the factor analysis set forth in *Danley*, Council has alleged sufficient facts to indicate that the Deputies used excessive force to maliciously and sadistically cause him harm. *See Danley*, 540 F.3d at 1307. Because Council claims that he was already on his knees with his hands in the air before the Deputies entered his cell, and he remained subdued and on the floor while the Deputies used the taser and shotgun on him, this alleged use of force was excessive. *See id.* at 1309; *Skrtich*, 280 F.3d at 1304. Although the Deputies may have perceived that certain elements of this situation posed a threat to them, these considerations do not alter the fact that Council alleged that tasers and beanbag rounds were used against him after he was compliant and subdued. The inference that the Deputies used force maliciously and sadistically for the very purpose of causing Council harm is supported by other circumstantial evidence. According to Council, before the Deputies entered his cell, they were "full of anger and rage" screaming "you want to throw piss" as they approached the cell. D.E. 1

13

at 3; *see Bozeman v. Orum*, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005) (per curiam) (noting that threatening language "can be relevant to . . . the determination of reasonable inferences about the [Deputies'] subjective state of mind."). Accordingly, Council has alleged conduct that would violate his Fourteenth Amendment rights. Moreover, even though Council only alleged that Deputies Bradley and Shelton applied force against him, Redman was present at the scene and failed to take steps to protect Council. *See Fundiller*, 777 F.2d at 1442.

Second, we have held that where a plaintiff alleges that the defendants used excessive force maliciously and sadistically to cause harm, the defense of qualified immunity is unavailable because the right to be free from gratuitous force after a prisoner has been subdued is a clearly established constitutional right. *Skrtich*, 280 F.3d at 1301, 1303. Because this right was clearly established before Council's violation occurred in 2007, Council has met the second prong of the analysis demonstrating that he alleged violations of clearly established constitutional rights. *See* D.E. 1.

Additionally, issues of fact remain as to whether Council's injuries were *de minimis*. Although the Deputies submitted a declaration from Dr. Cochran indicating that Council's injuries were extremely minor, Council alleged that in addition to being hit by beanbag rounds, he needed medical treatment because his

14

elbow was severely swollen, and his hand was injured as a result of being tased. Further, the grievance form completed by Council's fellow inmate and attached to Council's original complaint stated that Council was severely injured and needed medical attention as a result of the Deputies' conduct.

Finally, with respect to Deputy Redman's challenge to Council's failure-to-intervene claim, "[f]ailure to object to the magistrate[ judge's] factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (per curiam) (citation omitted); *see also Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115 (11th Cir. 1994) (citation omitted) ("As a general principle, this court will not address an argument that has not been raised in the district court."). Because Deputy Redman did not object to the magistrate judge's finding of a claim against Deputy Redman for failure to intervene, we do not have jurisdiction to review Deputy Redman's challenge for failure to state a claim. Thus, the challenge is deemed waived. Therefore, the Deputies were not entitled to qualified immunity.

## IV. CONCLUSION

Because Council sufficiently alleged that the Deputies violated his clearly established constitutional rights, the district court did not err in denying the Deputies' motion for summary judgment. In addition, because Deputy Redman

failed to object to the magistrate's finding that Council pled a failure-to-intervene claim, Deputy Redman cannot raise this issue on appeal. Accordingly, we affirm the district court's denial of defendant's motion for summary judgment as to qualified immunity.

**AFFIRMED in part, DISMISSED in part.**