[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-15012
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 26, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-01182-CV-J-32MCR

ANDREW VICKS, JR.,

Plaintiff-Appellant,

versus

CORRECTIONAL OFFICER FNU KNIGHT,
in his individual capacity,
CORRECTIONAL SGT. FNU ANDREWS,
in his individual capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 26, 2010)

Before BLACK, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Andrew Vicks, a Florida state prisoner proceeding *pro se*, appeals from the district court's order granting summary judgment in favor of correctional officers Richard Knight and Robert Andrews in Vicks's civil action, which he brought under 42 U.S.C. § 1983 for an alleged violation of his Eighth Amendment rights. On appeal, Vicks argues that the district court erred in granting summary judgment for several reasons. He asserts that Knight and Andrews failed to comply with his discovery requests, thus depriving him of the opportunity to support his claims with evidence. In addition, Vicks asserts that the Florida Department of Corrections ("FDC") refused to provide him with a videotape documenting Knight's alleged attack against him. Moreover, Vicks contends that he demonstrated a *prima facie* claim that Knight and Andrews violated his Eighth Amendment rights, and that they failed to conclusively demonstrate that such a violation did not occur. Vicks asserts that, if he were permitted to litigate his claims at trial, he could present evidence in the form of witness testimony and medical documents that would demonstrate that Knight unnecessarily beat him, while Andrews knowingly refused to intervene.

For the reasons set forth below, we affirm.

# I.

Vicks filed a complaint under 42 U.S.C. § 1983, naming the following defendants: (1) Knight, a correctional officer employed by the FDC, in his individual capacity; and (2) Andrews, a correctional officer employed by the FDC, in his individual capacity. In his complaint, Vicks claimed that Knight and Andrews violated his constitutional right to be free from cruel and unusual punishment, as guaranteed by the Eighth Amendment to the U.S. Constitution.

In support of these claims, Vicks alleged that, on August 2, 2007, he was placed under full restraints so that he could be escorted to and from an event in the prison library. After the event in the library ended, Knight and Andrews escorted Vicks back to his prison cell at approximately 9:15 p.m. After Vicks entered his cell, Knight removed Vicks's leg restraints, and Vicks waited for Knight to remove his waist and wrist restraints. Instead of removing these additional restraints, however, Knight "rushed" Vicks, "knocking him flat on his back," and began punching him in the ribs, kidneys, and back. Andrews positioned himself in the doorway of Vicks's cell so that other inmates would not be able to view the beating. Although Andrews observed the beating, and was aware that Knight's actions subjected Vicks to a substantial risk of serious harm, he did not attempt to intervene. According to Vicks, numerous inmates in cell wings C and D yelled for

3

Knight to stop beating Vicks. After the beating, Knight and Andrews left Vicks's cell, leaving him in the waist and wrist restraints. As a result of Knight's blows, Vicks was in "intense pain," felt as if he were about to pass out, and was "gasping for air." Around midnight, Vicks informed another FDC employee of what had occurred, and he was escorted to the prison's medical wing. According to Vicks, as a result of the attack, he sustained injuries in the form of a swollen and bruised torso, and bruised ribs. Based on these facts, Vicks claimed that Knight had violated his rights by using excessive and unnecessary force, and that Andrews had violated his rights by demonstrating deliberate indifference to a serious risk of harm.

Knight and Andrews filed a motion for summary judgment, stating that neither of them could specifically recall escorting Vicks to his cell on August 2, 2007. They asserted, however, that the exhibits that they had attached to their motion demonstrated that no beating had occurred. Because Knight did not beat Vicks, they argued, Andrews could not be held liable for failing to intervene in this alleged beating.

Knight's and Andrews's exhibits showed that Vicks was under "close management" status at the prison at the time that the alleged beating occurred. A document entitled "Close Management Daily Record of Segregation" reflected

4

that, at 9:40 p.m. on August 2, 2007, Vicks refused to relinquish his restraints. He ultimately relinquished the restraints at 1:20 a.m. on August 3. In an incident report dated August 3, 2007, Lieutenant J. Lindsey reported that, at 1:20 a.m., he approached Vicks's cell in order to remove Vicks's restraints, which Vicks previously had refused to relinquish to other correctional officers. According to Lindsey, Vicks stated that he was still wearing restraints because correctional officers had "jumped" him and beat him. Vicks was taken to the medical clinic, where a registered nurse, Marcia Mayer, examined him, but did not note any injuries.

In a FDC emergency room record, Mayer reported that she examined Vicks at 1:47 a.m. on August 3, 2007. According to Mayer, Vicks had reported that a FDC officer had hit him, and that he was suffering from pain that he placed at a level of 4 1/2 on a scale ranging from 0 to 10. Mayer noted that Vicks had zero bruises, contusions, bleeding, or lacerations, that he had a normal gait, and that he experienced no difficulty in moving his extremities. She certified that she had not been able to identify any injury. Another FDC emergency room record reflected that "T. Parrish," a senior licensed practical nurse ("SLPN"), examined Vicks at 2:00 p.m. on August 3. In this report, Parrish noted that Vicks had zero injuries, and no redness, swelling, or bruising. He certified that he had not been able to

5

identify an injury, and that he did not administer treatment. Vicks's additional medical records did not reflect that he had been diagnosed with any injury related to a beating in the months after August 3, 2007.

Knight and Andrews also included their affidavits in their exhibits, in which they admitted that they had escorted Vicks to his cell on August 2, but denied that any attack had occurred. Specifically, Knight stated that he knew that Vicks's allegations of an attack were untrue because he did not use any force against Vicks, and was required to document any force that he used against a prisoner in a "Use of Force Report." Knight stated that he had never failed to complete such a report after it was necessary for him to use force against an inmate. Knight further explained that, at times, inmates would refuse to relinquish their restraints. When this happened, correctional officers would leave the inmate in his restraints until he voluntarily relinquished them.

Michael Tomlinson, Chief of Security for Florida State Prison, executed an affidavit in which he averred that inmates would occasionally refuse to relinquish their restraints. Tomlinson stated that correctional officers would handle the situation by leaving the inmate in his restraints, and periodically checking to see if he would like to relinquish them. Mayer executed an affidavit, in which she stated that she examined Vicks at 1:47 a.m. on August 3, and could identify "no injury

6

whatsoever on his body." Thomas Parrish, a SLPN employed by Florida State Prison, executed an affidavit in which he stated that he examined Vicks at 2:00 p.m. on August 3. Parrish averred that his examination of Vicks did not reveal an injury. Frank Johanson, a licensed physician and the FDC Region One Medical Executive Director, executed an affidavit in which he stated that he had reviewed Vicks's medical records, and had concluded that there was no objective medical evidence supporting Vicks's claim that he suffered injuries to his torso, ribs, and kidneys. Johanson also averred that Vicks's medical records that post-dated August 3, 2007, did not reveal any records of injuries that he could have sustained from the alleged beating.

After Knight and Andrews filed their motion for summary judgment, Vicks filed a "Motion for Discovery," in which he requested that the court schedule a discovery period, and alleged that, despite the fact that he had requested discovery material from the Knight and Andrews, he had not received any documents that were necessary to support his claims. Vicks also submitted his sworn affidavit, in which he reasserted, nearly verbatim, the factual allegations in his complaint.

The magistrate entered an order directing that Vicks should be permitted to engage in discovery so that he could appropriately respond to the motion for summary judgment. Accordingly, the magistrate ordered that the parties engage in

discovery during a period of almost two months. The record reflects that, after the magistrate entered this order, Vicks did not file any motions related to discovery.

In opposing Knight's and Andrews's motion for summary judgment, Vicks reasserted his allegations that Knight punched him in the ribs, kidneys, and back, and that Andrews had observed the beating. Vicks again stated that numerous inmates had yelled for Knight to stop the beating. Vicks argued that there existed genuine issues of material fact as to whether: (1) Knight had used excessive force against him; (2) Andrews failed to intervene to prevent this abuse; and (3) whether the force used by Knight was necessary to maintain discipline. Vicks pointed out that his affidavit directly contradicted the affidavits of Knight and Andrews. He argued that this conflict demonstrated the need for a factfinder to evaluate the credibility of the witnesses in this case. In his opposition, Vicks did not assert that Knight and Andrews had failed to comply with any discovery requests, and did not mention the existence of a videotape documenting the beating.

The district court entered an order granting summary judgment in favor of Knight and Andrews. The court determined that Knight and Andrews had met their "initial burden of showing . . . that there are no genuine issues of material fact that should be decided at trial." The court emphasized that Vicks's medical records supported Knight's and Andrews's version of the events. The court

8

reasoned that, because Knight and Andrews had met their initial burden, Vicks was required to present documentation establishing a genuine issue of material fact to be litigated at trial. The court found that Vicks had failed to meet this requirement. In support of this finding, the court reasoned that the parties had recounted conflicting stories, and that Vicks's story was contradicted by the record. Specifically, the court found that the "Close Management Daily Record," Vicks's medical records, and the affidavits supported Knight's and Andrews's version of events, while Vicks did not point to any evidence, apart from his own affidavit, that supported his version of events. Based on the strength of the corroborating evidence presented by Knight and Andrews, and the lack of corroborating evidence presented by Vicks, the court concluded that summary judgment was appropriate in this case.

**II.**

As a general matter, in a civil case, we will not consider an argument that is raised for the first time on appeal. *BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1140 (11th Cir. 2007). We liberally construe a *pro se* litigant's pleadings. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

We review *de novo* a district court's ruling on a motion for summary judgment, applying the same legal standards as the district court. *Skrtich v.*

*Thornton*, 280 F.3d 1295, 1299 (11th Cir. 2002). "Summary judgment is appropriate only when the evidence before the court demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (quoting Fed.R.Civ.P. 56(c)). When considering a motion for summary judgment, "the evidence must be viewed in the light most favorable to the non-moving party." *Id.* In addition:

> A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise . . . must set forth specific facts showing that there is a genuine issue for trial. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.

*Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990). In other words, "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

The Eighth Amendment to the U.S. Constitution provides that, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

10

punishments inflicted." U.S. Const. amend. VIII. The use of force constitutes cruel and unusual punishment where it is applied "maliciously and sadistically to cause harm." *Skrtich*, 280 F.3d at 1300. Thus, in order to prevail on an excessive-force claim, a plaintiff must demonstrate that those who used force against him acted with a malicious purpose. *See Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). In addition, a plaintiff must prove that a requisite amount of force was used against him. *Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* (quotation omitted). In determining whether the amount of force used against an inmate was *de minimis*, a court may consider the extent of the injuries suffered by the inmate. *Skrtich*, 280 F.3d at 1302. Nevertheless, a court ultimately should decide an excessive force claim "based on the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. ___, ___, 130 S.Ct. 1175, 1177 (2010).

Moreover, an officer need not actually participate in using excessive force against a prisoner in order to be liable under § 1983 for cruel and unusual punishment. *Skrtich*, 280 F.3d at 1301. "Rather, an officer who is present at the

scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Id.*

Here, in his opposition to summary judgment, Vicks did not argue that Knight and Andrews had refused to comply with discovery requests during the scheduled discovery period. Vicks also did not argue that the FDC had refused to provide him with a videotape documenting the alleged August 2, 2007 beating. Moreover, after the court scheduled an official discovery period, Vicks did not file with the court any documents showing that he had served interrogatories or requests for production, and did not file a motion to compel. He did not file any documents indicating that he was experiencing difficulty in completing his discovery. Accordingly, even construing Vicks's pleadings liberally, he failed to preserve his argument— that Knight, Andrews, and the FDC prevented him from completing discovery— by properly raising this argument before the district court, and we do not consider these arguments on appeal.

Moreover, the district court did not err in granting summary judgment in favor of Knight and Andrews. As the court noted, Knight's and Andrews's version of events directly conflicted with the version of events that Vicks set forth in his complaint and affidavit. Knight's and Andrews's version of events was corroborated by the "Close Management Daily Record of Segregation," Lindsey's

12

August 3 incident report, Vicks's medical records, and the affidavits executed by Mayer, Parrish, Tomlinson, and Johanson. Vicks's version of events, on the other hand, was contradicted by all of the relevant evidence, with the exception of his own affidavit. Importantly, Vicks's August 2 and August 3 medical records demonstrated that at least two medical professionals examined him and could not identify any injury on his body. Specifically, the examining nurses could not identify any bruises or swelling in or around the area of Vicks's torso, and noted that Vicks did not experience difficulty in walking or moving his extremities.

Based on the above evidence, a reasonable factfinder could not believe that Vicks suffered any injury, and thus could not reasonably infer that Knight used anything more than a *de minimis* amount of force against Vicks. Because a jury could not have reasonably found that Knight beat Vicks, a jury also could not have found that Andrews knowingly failed to intervene in this abuse. Notably, although Vicks asserts on appeal that he could support his claim at trial with witnesses, this assertion is undermined by the record. In both his complaint and affidavit, Vicks asserted that numerous inmates yelled for Knight to stop beating him, and thus necessarily implied that numerous inmates either saw or heard that some sort of altercation occurred between himself and Knight. Vicks, however, did not present the affidavit of any inmate who may have seen or heard the beating, did not file a

13

motion to compel any such affidavit, and did not explain in any of his pleadings why he could not obtain such an affidavit.  Moreover, Vicks does not point to the existence of any medical evidence showing that he sustained an injury as a result of the alleged beating.  As a result, his claim that he could corroborate his version of events at trial lacks merit, and the district court did not err in granting summary judgment in favor of Knight and Andrews.

**AFFIRMED.**